# EXHIBIT 1

**FRANCHISE AGREEMENT**

**By and between**

**RED ROOF FRANCHISING, LLC**

**and**

**VARAHI HOTEL, LLC**

**ATLANTA (SMYRNA), GEORGIA**

**RED ROOF INN**
**FRANCHISE AGREEMENT**

**TABLE OF CONTENTS**

1. GRANT....2
2. TERM....3
3. DUTIES OF FRANCHISOR....4
4. FEES....4
5. DUTIES OF FRANCHISEE....6
6. PROPRIETARY MARKS....12
7. MANUALS....14
8. CONFIDENTIAL INFORMATION....14
9. ACCOUNTING AND RECORDS....15
10. MARKETING PROGRAM AND RESERVATION SYSTEM....16
11. INSURANCE....19
12. TRANSFER OF INTEREST....21
13. DEFAULT AND TERMINATION....26
14. OBLIGATIONS UPON TERMINATION....29
15. INDEPENDENT CONTRACTOR AND INDEMNIFICATION....31
16. ACKNOWLEDGMENTS AND REPRESENTATIONS....32
17. MISCELLANEOUS....33

**EXHIBITS**

EXHIBIT A – SUPPLEMENTAL TERMS
EXHIBIT B – OWNERSHIP SCHEDULE
EXHIBIT C – GUARANTEE, INDEMNIFICATION AND ACKNOWLEDGMENT

**ADDENDA**

SBA ADDENDUM
RENOVATION ADDENDUM

# RED ROOF INN
# FRANCHISE AGREEMENT

THIS RED ROOF INN FRANCHISE AGREEMENT (the "Franchise Agreement") is made and entered into this 14 day of December, 2012, by and between Red Roof Franchising, LLC, a Delaware limited liability company ("Franchisor"), and Varahi Hotel, LLC, a Georgia limited liability company ("Franchisee"). Capitalized terms not otherwise defined shall have the meanings as defined within this Franchise Agreement.

## RECITALS:

Franchisor has the right to grant licenses for the establishment and operation of inns which are designed to compete directly with other brands in the economy segment of the lodging market utilizing certain procedures, policies, standards, specifications, controls, identification schemes and proprietary marks and information including prototypical architectural plans, designs, layouts and distinctive color schemes, a computer system and reservation system and management and personnel training programs (the "System"), all of which may be changed, improved or further developed from time to time.

The distinguishing characteristics of the System include, without limitation, the name and mark "Red Roof Inn" and the Red Roof Inn logo, together with such other trade names, service marks, trademarks and trade symbols, emblems, signs, slogans, trade dress, logos, colors, insignia and copyrights as Franchisor has adopted and has designated for use in connection with the System and as Franchisor may hereafter acquire or develop and designate for use in connection with the System (the "Proprietary Marks").

Franchisee desires to obtain a franchise and to obtain rights to the Proprietary Marks and to own and operate a Red Roof Inn (the "Inn") at the location identified on Exhibit A (the "Approved Location").

Franchisee understands and acknowledges the importance of operating in conformity with the System and of complying with such product, service and operational standards, specifications, policies and procedures for constructing or renovating the Inn, equipping the Inn, and operating the Inn (the "Standards"), as may be published by Franchisor in hard copy and/or electronic form, as amended or supplemented by Franchisor in its sole discretion from time to time (the "Manuals").

Franchisee has conducted an independent investigation into the feasibility and advisability of establishing the Inn at the Approved Location, and has had the opportunity to consult with legal, accounting and other advisors of the Franchisee's own choosing in making a decision to enter into this Franchise Agreement and establish the Inn at the Approved Location.

As used in this Franchise Agreement, "Affiliate" or "Affiliates" means an entity or entities controlled by, controlling or under common control with, another entity.

NOW, THEREFORE, in consideration of the mutual undertakings and commitments set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

materials. Franchisor reserves the right at any time to require, and Franchisee agrees to conform to, any change in or presentation of the Proprietary Marks.

5.10. **Employee Relations/Guest Relations:**

5.10.1. Franchisee shall be solely responsible for all employment decisions and functions at and for the Inn, including, without limitation, those related to hiring, firing, training, wage and hour requirements, payment and provision of wages, salaries and fringe benefits, record-keeping, supervision and discipline. Franchisee further acknowledges and agrees that Franchisee shall be solely responsible for the acts and omissions of its employees. Franchisee shall specify on all employment applications used at the Inn that Franchisee is the sole employer of the Inn's employees and that there exists no employment relationship between Franchisor and any such employee.

5.10.2. Franchisee shall take such steps as are necessary to ensure that its employees preserve good guest relations, render competent, prompt, courteous and knowledgeable service, and meet the Standards.

5.10.3. Franchisee shall comply with Franchisor's policies and procedures set forth in the Manuals concerning guest relations and guest complaints. If Franchisee fails to resolve a guest complaint in accordance with Franchisor's policies, Franchisee shall be required to (a) reimburse Franchisor for any expenses incurred by Franchisor to resolve the guest complaint and (b) pay Franchisor a guest relations intervention fee if Franchisor communicates with the guest or otherwise intervenes or takes action to resolve the complaint. The guest relations intervention fee shall be as set forth in the Manuals, which fee may be modified by Franchisor from time to time.

5.11. **Compliance with Laws:** Franchisee shall (i) comply with all federal, state and local laws, rules, regulations, and ordinances, including but not limited to laws regarding public accommodation, occupational health and safety, labor, insurance, advertising, health and sanitation, innkeepers laws, telephone charges, data security and privacy legislation and (ii) timely obtain any and all permits, certificates and licenses necessary for the full and proper development and operation of the Inn, including, without limitation, licenses to do business, trade, fictitious or assumed name registrations, building permits, sales tax permits, health and sanitation permits and ratings, and fire clearances. Franchisee shall be solely responsible for and Franchisor shall have no responsibility for architecture or engineering, for code, zoning, or other requirements of the laws, rules, regulations or ordinances of any state, local municipality, urban community, or provincial or federal governmental body, including any errors, omissions, or discrepancies of any nature in any drawings or specifications obtained by Franchisee, including those provided by Franchisor. Without limiting the foregoing, Franchisee shall be solely responsible for compliance with any requirements of the Americans with Disabilities Act. Franchisee shall provide proof of compliance herein as Franchisor may require.

5.12. **Risk of Litigation:**

5.12.1. Franchisee shall promptly report to Franchisor all incidents involving safety, security, public relations or serious injury to persons or property that occur at, or involve, the Inn and shall consult with Franchisor before speaking to or corresponding with the media about any such incident. Franchisee shall otherwise comply with those portions of the safety, security and public relations provisions as designated by Franchisor in the Manual. Notwithstanding the foregoing, Franchisee acknowledges and agrees that it is Franchisee's sole responsibility to maintain the safety and security of its employees, guests and others who may be on the Inn premises.

from Franchisee, if any, against any payment due hereunder to Franchisor, its Affiliates and its approved or designated suppliers.

## 15. INDEPENDENT CONTRACTOR AND INDEMNIFICATION

15.1. **Independent Contractor:** The parties hereto understand and agree that, in connection with its performance under this Franchise Agreement, Franchisee, its agents, employees and successors, shall act as independent contractors, and nothing herein shall at any time be construed to create the relationship of employer and employee, partnership, principal and agent, or joint venture between Franchisor (or its Affiliates) and Franchisee. In addition, Franchisee shall have no right or authority to enter into any contract, commitment, or agreement, or to speak on behalf of, or incur any debt or obligation in the name or on behalf of, Franchisor or its Affiliates unless expressly authorized to do so in writing by Franchisor. Franchisee shall exercise full and complete control over, and have full responsibility for, its contracts, daily operations, labor relations, employment practices and policies, including but not limited to recruitment, selection, hiring, disciplining, firing, compensation, work rules and schedules of its employees. During the term of this Franchise Agreement, Franchisee shall at all times hold itself out to the public as an independent contractor who independently owns and operates the Inn pursuant to a franchise agreement from Franchisor.

15.2. **Indemnification and Release:**

15.2.1 Franchisee assumes full responsibility and liability for its construction, renovation, establishment or operation of the Inn and Franchisee's performance under this Franchise Agreement. Franchisor and its Affiliates shall in no event be liable by reason of any act or omission of Franchisee in its construction, renovation, establishment or operation of the Inn or its performance under this Franchise Agreement or for any claim or judgment arising therefrom against Franchisee or Franchisor or its Affiliates.

15.2.2. Franchisee shall indemnify, protect, defend release and hold harmless Franchisor, its Affiliates and predecessors, their respective successors and assigns, and the officers, directors, shareholders, partners, agents, representatives, independent contractors, servants and employees of each of them, past or present (the "Indemnitees"), from and against any and all payments of money (including, without limitation, all liabilities, losses, damages, claims, suits, demands, fines, settlement amounts, costs, expenses, attorneys' fees, investigative fees and court costs) for injury to property or persons including death (and in addition including, without limitation, the injury or death of any of Franchisee's employees or agents or damage to any of their property) which may arise out of or in connection with any act or omission, whether actual or alleged, negligent or otherwise, of Franchisee, its employees or agents, in connection with Franchisee's ownership, construction, renovation, establishment or operation of the Inn, the performance of Franchisee, its employees or agents, under this Franchise Agreement (including, but not limited to, fraudulent or dishonest acts of Franchisee or its employees or agents, personal injury, slander, libel, defamation, false arrest, detention or imprisonment, malicious prosecution, wrongful entry or eviction, invasion of privacy, or disclosure of any customers personally identifiable or credit card information),or the default by Franchisee or its owners of any representation, warranty, or obligation under this Franchise Agreement. Franchisee's obligations under this Section 15.2.2 shall also extend to circumstances in which the damages to property or persons including death (and in addition including, without limitation, the injury or death of any of Franchisee's employees or agents or damage to any of their property) arise in whole or in part as a result of the negligent acts or omissions of the Indemnitees, but shall not apply to the extent they are caused by the intentional or willful misconduct of such Indemnitee. The obligations of Franchisee under Section 15.2.2 shall survive the termination or expiration of this Franchise Agreement. Franchisee shall comply with its obligations hereunder within ten (10) business days of its receipt of Franchisor's written demand for indemnification.

15.2.3. Franchisor shall have the right, through counsel of its own choosing and at Franchisee's sole cost and expense, to direct, manage and control its defense of any matter to the extent that it could directly or indirectly affect Franchisor or its Affiliates. In addition to the foregoing, Franchisee also will reimburse Franchisor or its Affiliates for all expenses reasonably incurred by Franchisor or its Affiliates to protect themselves from, or to remedy, defaults by Franchisee under this Franchise Agreement.

15.2.4. Franchisee agrees that all of the obligations of Franchisor under this Franchise Agreement are to Franchisee, and no other party is entitled to rely on, enforce or obtain relief for default of, such obligations, directly or indirectly, by subrogation or otherwise. Franchisee agrees and understands that Franchisor and its Affiliates shall not, nor shall they have the obligation to, indemnify or hold Franchisee harmless from and against any action or claim by any third party based upon Franchisor's or its Affiliates' exercise of any of its rights in accordance with the terms of this Franchise Agreement.

## 16. ACKNOWLEDGMENTS AND REPRESENTATIONS

16.1 **Acknowledgments by Franchisee:** Franchise acknowledges that:

16.1.1. It has independently investigated the business franchised hereunder, including current and potential market conditions, competitive factors and risks, and recognizes that the business venture contemplated by this Franchise Agreement involves business risks and that its success will be largely dependent upon the ability of Franchisee as an independent business owner.

16.1.2. It has not received from Franchisor or its representatives, or relied on, any representation, warranty or guaranty, express or implied, whatsoever, including, but not limited to, the potential volume, profits or success of the business venture contemplated by this Franchise Agreement, or that otherwise contradicts the information in Franchisor's Franchise Disclosure Document.

16.1.3. It has received a completed copy of this Franchise Agreement, the exhibits and addenda hereto, and the agreements relating thereto, if any, at least seven (7) calendar days before the date on which this Franchise Agreement was executed, or such longer period as required by the law of the state in which the Inn is located. Franchisee further acknowledges that Franchisee has received the Franchise Disclosure Document required by the Federal Trade Commission and, if applicable, the state in which the Inn is located, at the earlier of (i) at least fourteen (14) calendar days before the date on which this Franchise Agreement was executed; or (ii), if required by state law, at the "first personal" meeting with Franchisor's representatives, or such longer period as required by the law of the state in which the Inn is located.

16.1.4. It has read and understood this Franchise Agreement, the Attachments, Exhibits, Schedules and Addenda hereto, and the agreements relating thereto, if any, and that Franchisor has accorded Franchisee ample time and opportunity to consult with advisors of Franchisee's own choosing about the potential benefits and risks of entering into this Franchise Agreement.

16.1.5. Franchisee acknowledges that the System may be supplemented, improved and otherwise modified from time to time by, and in the sole discretion of, Franchisor, and Franchisee agrees to comply with all reasonable requirements of Franchisor in that regard.

16.2 **Representations by Franchisee:** Franchisee represents and warrants to Franchisor that:

16.2.1. Franchisee represents that the owners named in Exhibit B to this Franchise Agreement have the legal and/or beneficial interests set forth in the ownership Schedule contained in

IN WITNESS WHEREOF, the parties hereto have duly signed and executed this Addendum as of the day and year first above written.

**FRANCHISOR**

**Red Roof Franchising, LLC**
a Delaware limited liability company

By: ______________________________
Name: Robert G. Wallace
Title: Executive Vice President

**FRANCHISEE**

**Varahi Hotel, LLC**
a Georgia limited liability company

By: ______________________________
Name: Bharatkumar R. Patel
Title: Manager

**EXHIBIT A TO**
**RED ROOF INN FRANCHISE AGREEMENT**

**SUPPLEMENTAL TERMS**

1. Expiration Date:
   This Franchise Agreement shall expire twenty (20) years after the Effective Date.

2. Approved Location:
   The Approved Location for the Inn is 2200 Corporate Plaza, Smyrna, Georgia 30080.

3. To be operated as: ☒ Red Roof Inn
   ☐ Red Roof Inn & Suites (See Addendum)

4. Protected Territory:
   The Protected Territory is a three (3) mile radius from the center point of the Inn.

5. The following Red Roof Inn locations are in existence within the Protected Territory on the date hereof:
   None.

6. Guest Rooms:
   The Inn shall have 136 guest rooms.

**FRANCHISOR**

**Red Roof Franchising, LLC**
a Delaware limited liability company

By: [signature]
Name: Robert G. Wallace
Title: Executive Vice President

**FRANCHISEE**

**Varahi Hotel, LLC**
a Georgia limited liability company

By: [signature]
Name: Bharatkumar R. Patel
Title: Manager